## RUNYAN vs. STEWART.

A mortgage given by husband and wife to secure the purchase money of the mortgaged premises, can not, after having been satisfied and discharged of record, be set up by the assignee of the husband as a bar to his widow's right of dower.

P. E. R., the plaintiff's husband, during coverture, conveyed lands to B., subject to a mortgage thereon, executed by P. E. R. and his wife, to G., the former owner, to secure the purchase money, $1600. At the time of the conveyance, P. E. R. had paid $400 on the mortgage. B. subsequently paid $1200, the balance due upon the mortgage, and the mortgage was satisfied and discharged of record. The defendant was in possession of the premises as a purchaser from a person deriving title from B. *Held*, that the plaintiff was entitled to dower in the premises; and that she could recover the same in an action at law. JOHNSON, J. dissented.

THIS was an action of ejectment, brought by the plaintiff to recover dower, as widow of Philip E. Runyan, deceased, in certain real estate situated in the town of Gorham, Ontario county. Issue being joined, the cause was brought to trial at the circuit court held before Welles, justice, in the county of Ontario, in July, 1848. Upon the trial, the plaintiff gave in evidence a deed from William Gamber and wife to Philip E. Runyan, dated March 31st, 1828, conveying, for the consideration of $1600, one hundred and ten acres of land, being the same premises described in the declaration. The said Philip E. Runyan was proved to have been the husband of the plaintiff at the date of this deed. It was also proved that he died June 24th, 1845. That he took possession of the said premises under said deed, and remained in possession over a year. That demand of dower in the premises was made by the plaintiff's agent, in July, 1847. That the defendant was in possession of said premises, at the time of the commencement of the action. The plaintiff then rested. The defendant then gave in evidence a mortgage executed by the said Philip E. Runyan and Priscilla his wife, dated March 31st, 1828, upon the same premises described in the said deed from Gamber and wife to Philip E. Runyan, of the same date, consideration $1600; conditioned to pay $1600, as follows: $400, April 1st, 1828, and $200 the first day of April, every year

thereafter, until the whole amount should be paid.   The mort-
gage referred to a bond bearing even date therewith, conditioned
the same as the mortgage, which was also given in evidence,
and proved to have been paid April 7th, 1832.   P. E. Runyan
paid $400, on the 29th of March, 1828.   Satisfaction was en-
tered, and the mortgage discharged of record, April 7th, 1832.
Also, a deed from said Philip E. Runyan to Hozial H. Baker,
dated April 21st, 1829, conveying the same premises mentioned
in the deed from Gamber and wife to Runyan, for the consid-
eration, as expressed, of $1600.   Also, a deed from Hozial H.
Baker and wife, to Philip E. Runyan, dated April 21st, 1829,
conveying a certain five acres of land, part of lot number five,
town of Gorham, for the consideration, as expressed, of $650.
Also a deed from said Philip E. Runyan and Priscilla his wife,
to Vinson Runyan, dated December 4th, 1830, conveying the
last mentioned five acres of land, for the consideration, as ex-
pressed, of $650.

It was admitted that at the time of the trial Charles Seymour
held the title of the premises in question through mesne con-
veyances under Baker, and that David G. Stewart, the defend-
ant, was in possession under a contract to purchase of Seymour.
The said Hoziel H. Baker was then introduced and examined as
a witness on behalf of the defendant, and testified as follows :
" In 1829, when the second payment was due upon the bond and
mortgage to Gamber, Philip Runyan was embarrassed, and
could not meet it.   He and I entered into an arrangement by
which we agreed to exchange lands, he to take my five acre lot,
valued at $650, and I to take his Gamber lot, valued at $1600 ;
I assuming to pay off the balance due on the bond and mortgage
to Gamber, for the purchase money, he having paid $400 on
them.   The consideration in his deed to me, stated to be $1600,
was my five acre lot, and the amount due on the bond and mort-
gage which I had assumed to pay.   The consideration stated in
my deed to him to be $650, was made by allowing the $400, he
had paid on the bond and mortgage to Gamber.   He let me
have a horse, valued at $100, and a bond against Matthew
Rippey, for $333, upon which there had been $40 paid."   The

defendant's counsel then asked the witness the following question, viz. "The $400, paid by Runyan upon the bond and mortgage to Gamber, the horse and the Rippey bond, amounted to more than the $650, stated in your deed to Runyan. How was the difference adjusted?" Answer—"Philip Runyan was owing me at the time; he also remained on the Gamber farm for some time, so that the rent and the amount he owed me squared up every thing. I can not state the items. The whole transaction was an exchange of lands. He took my five acre lot and I his Gamber lot, and I was to pay off the mortgage. I do not remember how long he remained on the farm after the exchange." Here the evidence closed. The defendant's counsel requested the justice to instruct the jury, 1st. That at the time Philip E. Runyan conveyed the premises in which the plaintiff seeks to recover dower, she had no dowable estate or interest in the land thus conveyed, her husband having only an equity of redemption; and the plaintiff having joined in the execution of the mortgage, her dower interest and estate passed to the mortgagee. 2d. That the plaintiff could not set up the payment of the mortgage by her husband's grantees for the purpose of restoring her right of dower, and that such payment did not restore her legal right of dower. 3d. That after having joined in the execution of the mortgage to Gamber, the plaintiff had no interest or estate in the equity of redemption, which remained in her husband alone, and which was all he conveyed to Baker. And the payment of the mortgage by his grantees, by operation of law, vested the legal title derived through the mortgage, in such grantees, and all the estate which the plaintiff had conveyed by the mortgage to the mortgagee. 4th. That the two transfers of land were mere exchanges; and that the plaintiff, having united with her husband in the conveyance of the land deeded to him by Baker, she had by that act barred herself of the right to make an election after her husband's death, and had virtually elected to take her dower in that land, and she could not now claim dower in the premises in question. 5th. That if she could claim dower in both, she had not elected to take it in the premises in question, within one year after her husband's death; she

was therefore precluded from electing to take dower in said premises.

The said justice refused so to charge the jury, and directed a verdict for the plaintiff, to which the defendant's counsel duly excepted. A motion was now made on behalf of the defendant to set aside the verdict, and for a new trial. The case was argued by

*Gideon Granger*, for the defendant.

*Geo. Willson*, 2d, for the plaintiff.

WELLES, P. J. In this case I am unable to go with my brother Johnson the length he has gone. If Baker had taken an assignment of the mortgage given by the plaintiff and her husband to Gamber for the purchase money, then I think he might be regarded as holding under it. But instead of doing so, he procured it to be discharged and satisfied of record. There can be no doubt that the husband of the plaintiff acquired an estate in fee by the deed from Gamber, subject to be defeated by the mortgage to the latter. (*Runyan* v. *Mersereau*, 11 *John*. 534, 2d ed. 593. *Jackson* v. *Bronson*, 19 *Id*. 325.) These cases, as well as many others that might be cited, hold that at law as well as in equity, a mortgage is merely a security, and the mortgagee has but a chattel interest, and that the freehold is in the mortgagor.

No one would deny that the plaintiff could maintain this action if the mortgage was still unpaid and in the hands of Gamber the mortgagee, or any assignee of him, other than Baker or his grantees. And it seems to me it would be going beyond any decided case in this state or elsewhere, with one exception, to hold that a mortgage satisfied and discharged of record can be set up by the assignee of the husband as a bar to his widow's dower. That exception is the case of *Popkin* v. *Bumstead*, (8 *Mass. Rep.* 491,) which I admit goes the length of the doctrine contended for. I have examined it with care, and feel constrained to dissent from the reasoning and conclusion of the

Runyan v. Stewart.

court by which it was decided. I think it should be classed among those hard cases which make bad precedents. It is hard, and apparently unjust, in most cases, to allow a widow to recover dower against the conveyance of the husband. But such hardship ought not to weigh with courts to induce them to overrule settled principles, or to make law for parties. Where a mortgage is paid and satisfied of record, it is destroyed and blotted out of existence. The payment and discharge of record of the mortgage in this case had the effect to remove it as a cloud and incumbrance of Baker's title, and that I think was its only effect upon his title. If he intended to keep it alive and operative for any purpose, he should have procured it to be assigned to him. Possibly Gamber would not have assigned it. And I know of no process by which he could be compelled to do it. If it should never be enforced, he, Baker, or his assigns, would not be injured by it in fact. If the mortgagee should foreclose, in equity, the plaintiff would have to be a party, and then by paying a share as between her and Baker or his assigns she would be protected in her dower. By paying it off voluntarily it becomes extinguished.

I incline to think that Baker might, after he had paid the mortgage, have filed his bill to be subrogated in place of the mortgagee, and have a decree that the plaintiff contribute or be barred. But that, it seems to me, was his only remedy after the mortgage was discharged. The doctrine of subrogation, however, prevails only in a court of equity, and is never enforced in a court of law. A defendant in a judgment, who is merely surety for his co-defendants, and who is compelled to pay the judgment, can not at law enforce the lien of the judgment against his principals, but must resort to a court of equity, to be subrogated to the rights of the plaintiff. This, too, looks hard; nevertheless, the forms of law require it. If Gamber was willing to assign the mortgage, it was Baker's folly that he did not take it. If he had done so, the plaintiff would have been put to her suit in equity for her dower. As it is, I think Baker or his assigns must go there for whatever remedy he or they may be entitled to.

There is nothing, in my judgment, in the other points raised by the defendant's counsel. The evidence does not, I think, show an exchange of lands within the meaning of the statute. (2 *R. S.* 740, § 3.) The conveyance by Runyan to Baker of the premises in question was in the nature of a bargain and sale, and the conveyance of the five acres by the latter to the former was in part payment. The amount Baker was to pay Runyan for the premises was $1600. This was made up by Baker's assumption to pay the balance due on the mortgage, $1200, and the conveyance of the five acre lot at $650. This, however, overpaid the first amount of $1600. To meet such overplus, Runyan let Baker have a horse at $100, and a bond against one Rippey upon which was due about $300. This again brought Baker in debt upon this trade, and the matter was arranged between them by applying another indebtedness of Runyan to Baker, and allowing Runyan to remain in possession of the premises in question, long enough to make all matters even between them. We all agree that this would not amount to an exchange of lands, under the statute.

My opinion is, that a new trial should be denied.

SELDEN, J. concurred.

JOHNSON, J. (dissenting.) The plaintiff's husband, in April, 1829, during coverture, conveyed the premises in question to Baker, subject to a mortgage thereon, executed by the husband and the plaintiff to secure the payment of the purchase money to Gamber, the former owner. At the time of the conveyance the husband had paid $400 on the mortgage, and the balance remaining unpaid was $1200, which Baker subsequently paid, and the same was satisfied of record. The defendant is in as a purchaser from a person deriving title from Baker, and the question arises whether in such a case the widow can recover her dower, in an action at law; or whether she must not resort to equity, and pay or offer to pay her due proportion of the mortgage sale.

Where the purchaser of real estate gives a mortgage to secure

Runyan v. Stewart.

the purchase money, the interest of such purchaser is a mere equity of redemption, as against the mortgagee and those claiming through or under him. As against the mortgagee, in such case, and those claiming under him, the widow is not entitled to dower in the land, but she may claim it against all other persons. (1 *R. S.* 741, § 5.) This presents the distinct question whether Baker, who took the equity of redemption by conveyance from the husband of the plaintiff subject to the purchase money mortgage, and afterwards paid it off, can be said to claim under the mortgage, within the meaning of the statute. Several cases have been decided by this court nearly if not precisely analogous to this in principle. In *Hitchcock* v. *Harrington*, (6 *John.* 290,) the heir of the husband released his interest to a tenant in possession, who paid off a mortgage upon the land, given by the husband to secure the payment of the purchase money. In *Collins* v. *Torry*, (7 *Id.* 278,) the husband conveyed, leaving a similar mortgage outstanding, and the purchaser purchased and took an assignment of it from the mortgagee. Such also was the case of *Coates* v. *Cheever*, (1 *Cowen*, 475.) In the two last cases the court held that the mortgages, and the estates respectively created by them, were merged in the superior title by the assignment, and thus extinguished. And in all of them it was distinctly adjudged that where such mortgages were thus extinguished, either by purchase or direct payment, they could not be set up against the widow's claim of dower. These decisions stand in part upon the principle that the purchaser from the husband who has extinguished the mortgage by purchase or payment instead of foreclosure, is estopped from denying the seisin of the husband, as against the widow claiming dower in the premises, and in part upon the ground that the mortgage being extinguished there was no estate out of the husband that could be set up. All the cases agree that as against the mortgagee for the purchase money and those claiming under him, there is no seisin in the husband; the title of the mortgagee is paramount. So far as these cases rest upon the ground of estoppel by reason of a conveyance from the husband by mere *release or quit-claim*, they are entirely over-

turned by the case of *Sparrow* v. *Kingman*, (1 *Comst.* 242.) In *James* v. *Morey*, (2 *Cowen*, 246,) it was held by the court of last resort that the question of merger depended upon the intention of the person who took the assignment of an outstanding title or estate, provided he had any interest in preventing the merger. And such has ever since been regarded as the rule. This is another feature in which *Collins* v. *Torrey* and *Coates* v. *Cheever* were not well considered.

But the authority of all three of the cases has been severely shaken, if not entirely overthrown, by the decision of this court in *Van Dyne* v. *Thayer*, (19 *Wend.* 162.) In that case the husband conveyed the premises to the heirs of the mortgagee in satisfaction of the mortgage, and the court held that the widow was entitled to dower in the equity of redemption merely, and could not recover it in an action at law. The principle of that case seems to me decisive of this. The only difference in the two cases is that there the husband conveyed to the heirs of the mortgagee, and here to a third person subject to the mortgage. In both cases the object of the conveyance was to assign the husband's equity of redemption merely, and to effectuate an extinguishment of the mortgage. It would manifestly be grossly inequitable, after a party who has purchased a mere equity, subject to a superior outstanding estate, has been compelled to purchase that estate in, or quiet or extinguish it by payment, to subject him to the widow's claim for dower in the superior estate derived from another, instead of the inferior one acquired from the husband. Such an adjudication would seriously mar the symmetry and perfection of the legal rule. It would give to the widow the benefit of an estate of which her husband was never seised, but which the party had been compelled to acquire elsewhere. By the conveyance here, Baker took the premises from the plaintiff's husband precisely as the latter held it. The mortgage, as to both, was a superior estate, and neither had any seisin as against Gamber, the mortgagee, for the purchase money.

The plaintiff was then dowable of the equity of redemption merely. Her husband had no other estate, and conveyed no other to Baker. Baker converted that into an absolute estate

---

---

in fee by extinguishing Gamber's superior outstanding estate and thus investing himself with it. This was done in pursuance of the agreement with the plaintiff's husband, and as the end and purpose of the conveyance. Baker was in no sense a stranger to Gamber's title, but was subjected to it in terms by his agreement, and when he bought or extinguished it, he did it to perfect or secure his own title, and not for the benefit of his grantor or the plaintiff. Had he taken an assignment of the mortgage, instead of causing it to be satisfied, it would, I take it, as the rule is now settled, have been an effectual bar to the plaintiff's claim at law. (*Russell* v. *Austin*, 1 *Paige*, 195. *James* v. *Morey*, 2 *Cowen*, 246.) It seems to me it can make no difference in principle that Baker chose to cancel the Gamber mortgage, instead of taking an assignment of it to himself; the difference in such a case is merely of form, not of substance. The satisfaction, in no way that I am able to perceive, upon principle, strengthens the plaintiff's claim or weakens the defendant's. The controlling fact still remains unaffected, that the superior title which stood in the way of the plaintiff's right of dower in the premises, was never in the husband, and did not come to the defendant and those under whom he claims through the husband. This precise question was decided in the supreme court of Massachusetts, in *Popkin* v. *Bumstead*, (8 *Mass. Rep.* 491.) That was a case of payment and satisfaction of the mortgage by the person holding the equitable title from the husband, and the court held that the payment of the mortgage, under such circumstances, gave the widow no claim to dower. And the court say, " When the tenant purchased the equity of redemption, it belonged to him to pay the money due on the mortgage and thus rid his estate of that incumbrance. Having all the equitable interest in himself when he had paid the money due by the mortgage, the legal estate followed the equitable interest and he became seised of the whole fee simple. If this were not the legal operation of the transaction, *the law would construe the discharge of the mortgage by the mortgagee, a release of the legal estate by him to the tenant*, who had become lawfully possessed of the equitable interest, and from whom the

Runyan v. Stewart.

consideration for that discharge flowed, rather than such mischief should follow." Cowen, justice, in *Van Dyne* v. *Thayer*, cites this case with approbation, also *Gibson* v. *Crehore*, (3 *Pick*. 475, and 5 *Id*. 146,) and says that they seem to him to contain the true rule.

It seems to me clear that the defendant is a person claiming under the mortgagee of the plaintiff and her husband, within the true intent and meaning of the statute, and that he is not estopped by reason of the conveyance from the husband, or precluded by the discharge of the mortgage, from setting up the mortgagee's title, in bar of the plaintiff's action at law. I put this distinctly upon the ground that the husband conveyed his interest in the premises, which was but an equity of redemption subject to the mortgage, and agreed with his assignee or grantee that the latter should extinguish the mortgage. That such grantee was not a mere naked holder of the husband's rights or interest, and a stranger to the mortgagee's title, or a mere volunteer in extinguishing the mortgage. If there are any cases in this court which hold a contrary rule, in such a case, I have no hesitation in saying that they ought not to stand as the law of the land. The plaintiff should be entitled to her dower in the equity of redemption which her husband had during the coverture and conveyed or assigned, and which she may recover in equity by paying her proportion of the mortgage debt. As this disposes of the whole case, it is unnecessary to notice the other questions raised by the bill of exceptions.

I am of opinion that a new trial should be granted.

New trial denied.

[MONROE GENERAL TERM, September 2, 1850. *Welles*, *Selden* and *Johnson*, Justices.]