VAN BRUNT, P. J., concurs. BARTLETT, J., concurs in the result.

---

GRAY *v.* MISSIONARY SOC. OF M. E. CHURCH *et al.*

(*Supreme Court, Special Term, Albany County.* September, 1888.)

1. WILLS—CONSTRUCTION—AMBIGUITIES—FUNERAL EXPENSES.
   Testator gave a life-estate in real and personal property to his wife, and provided: "After the death of my said wife, and her debts and funeral expenses are paid, the balance of my estate," etc. The wife left property sufficient to pay her debts and funeral expenses, and, by will, directed their payment, not claiming in the will that such expenses be·paid from the husband's estate. *Held*, that they should be paid from the wife's estate, the provision in the husband's will being regarded as con-tingent on the necessity of paying the expenses from his estate.

·2. SAME—DEVISE FOR LIFE—POWER OF SALE.
   Testator, after giving to his wife a life-estate in real and personal property, added the following: "I do hereby authorize and empower my said wife to sell all or any of my real estate that she may deem best and proper." *Held*, that the latter clause did not change the provision giving a life-estate, and the wife's estate was charge-able, at her death, with the avails of land of the testator which were, or should have been, in the wife's possession.

3. SAME—DESCRIPTION OF LEGATEES.
   A legacy to "Betsey E. Farley Pasco" should be paid to Betsey E. Pasco Farley, such being the evident intention of the testator; also, a legacy to the "Missionary

of the Methodist Episcopal Church Society" sufficiently indicates the Missionary Society of the Methodist Episcopal Church, the intention of the testator being clearly shown.

Petition by Stephen R. Gray, executor of Esra L. Pasco, deceased, for construction of said decedent's will, and directions as to payment of debts, legacies, etc.

The first clause of the will was as follows: "I give, devise, and bequeath to my wife, Barbara A. Pasco, all my real and personal property, to have and to hold as long as she may live, subject to the following terms and restrictions: I do hereby authorize and empower my said wife to sell all or any of my real estate that she may deem best and proper." By items 2, 3, 4, 5, and 6, specific legacies were given, and a trustee appointed to take charge of the estate at the death of the wife. The wife died testate, directing the payment of her debts and funeral expenses. The complaint in this action asks the direction of the court, as to whether the debts and funeral expenses of the wife shall be paid from her estate or from that of the husband, also in what order, and out of what particular funds, they shall be paid, and to whom the specific legacies shall be paid, the legatees being evidently incorrectly specified in the will.

*H. L. Washburn, Jr.*, for plaintiff.    *Warren S. Kelley*, for defendants.

LEARNED, J.    I do not think it necessary to cite authorities for most of my conclusions.    It is evident that the testator, Esra L. Pasco, by the name "Betsey E. Farley Pasco," meant the defendant Betsey E. Pasco Farley; that by the name "Georgianna Crana Baker," he meant the defendant Georgianna Baker Crana; that by the name "Magie Miles Sager," he meant the defendant Maggie Sager Miles; that by the name "Mary Gifford Sager," he meant the defendant Mary Sager Gifford. *Charter* v. *Charter*, L. R. 2 Prob. & Div. 315, L. R. 7 H. L. 364.    The legacies must be paid accordingly.    By the "Missionary of the Methodist Episcopal Church Society," the testator meant the "Missionary Society of the Methodist Episcopal Church," and the legacy must be paid accordingly.    The executor of Barbara L. Pasco, as was admitted on the argument, has sold the specific legacies in her will, in items 2, 3, 4, and 6, under an agreement with the legatees that the avails (or value) shall stand in place of the specific articles.    The real estate of Barbara has been sold, and the purchaser holds the purchase price as security.    As the real estate would be eventually liable for her debts, it seems to be of little consequence to distinguish between these avails, now in the purchaser's hands, and her personal property, so far as the payment of debts is concerned.    It could only be material between legatees and devisees.    She directs the payment of her just debts and funeral expenses.    I think that those should be paid out of her estate, as it is sufficient, and not out of the estate of Esra L. Pasco.    His will, inartificially drawn, gives a life-estate in real and personal property.    Then, in the third item, it says: "After the death of my said wife, and her debts and funeral expenses are paid, the balance of my estate that shall or may be left, to be divided," etc.    Now, it is quite possible that, if Barbara had left no property from which to pay her debts and funeral expenses, these would have been payable out of Esra's estate, or if, leaving property, she had, in her will, claimed from Esra's estate such payment, then, perhaps, that estate would have been charged; but, as she directed the payment of her debts and funeral expenses, which it was not necessary for her to do, in ordinary cases, in order to make them payable from her estate, it is reasonable to understand that she meant what she said, and that her executor was to pay them from her estate.    If it be urged that Esra also meant what he said, the answer is this:    He probably intended to provide, if there should be any necessity therefor, that his wife should be suitably buried, and the little debts she might contract should be honorably discharged; but, as she has provided for these

things herself, his estate is not to be called upon; just as if she paid her debts in her life.

Barbara, by virtue of a power in the will, sold certain land for $3,000. In this $3,000 she had a life-estate only; although, of course, it was applicable to debts, etc., under Esra's will. She kept no accounts of her dealings with the estate; but, so far as can be ascertained, there remained in her hands $656.25 of the estate of Esra, after allowing her all credits. That is to say, this sum ought to have been in her hands at her death. This appears to have partly, or perhaps wholly, come from the real estate sold by her, under the power in Esra's will. Her administrator has realized, from the assets named in the residuary clause, $375.98, subject to expenses of administration, and fees, etc., of administrator, and from her whole personal property, $999.27. The undisputed claims against her estate are $566.06, and funeral expenses are $162.17. The avails of her real estate sold since her death are $3,333.33, from which should be deducted expenses of sale, etc.,—about $140.16. It therefore appears that the personal and real property of Barbara, are enough to pay all claims against her estate. Specific legacies must be applied to payment of debts, before land, unless special direction to the contrary is given in the will. *Rogers* v. *Rogers*, 1 Paige, 188; affirmed, 3 Wend. 503. *Hoes* v. *Van Hosen*, 1 N.Y. 120. This disposes of any question as to the legacies in items 2, 3, 4, 5, and 6. The debts owing by Barbara, including the aforesaid liability to the estate of Esra, and the funeral expenses, are more than enough to absorb all the avails of the personal property, including the specific legacies. And therefore some part of the avails of her real estate will be needed. Her administrator, then, is to pay—

| | |
|---|---:|
| First, her funeral expenses, say, | $  162 17 |
| Then her debts, including the debts to Esra's estate, say, | 566 06 |
| | 656 25 |
| | **$1,384 48** |
| Avails of personal property, | 999 27 |
| Balance which must come out of avails of real estate, | 385 21 |
| Net avails of real estate, say, | 3,193 17 |
| Residue, | 2,807 96 |

—to be paid to the parties mentioned in the eighth clause of her will. These figures are not given as accurate amounts. There are commissions of the administrator, and there may be interest on the debts. These are given only to illustrate my meaning. It will be seen that I consider the balance which should have been in Barbara's hands at her death, and of personal property and of avails of real estate of Esra, to be a debt owing to his estate. I do not think that the authority to sell real estate, contained in the first clause of his will, changed the provision that she was to have a life-estate. The sum of $250 to the "Rural Cemetery" should, of course, be paid out of the $650.25; but I do not see that this will practically make any difference. If paid to the cemetery by the administrator, it reduces the amount owing by Barbara's estate to Esra's. Each of the attorneys appearing for plaintiff and defendants should be allowed their bills of costs out of the estates. As to the proportion of costs between the two estates, and as to any extra allowance, I will not decide without hearing counsel.